UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    Index No.:
CLAUDIA TRIPI,

                Plaintiff,

     -against-                                                                    **COMPLAINT**


CR GEMS, INC.,                                                                    Plaintiff Demands a
JSD TRADING LTD and                                                         Trial by Jury
JEETENDRA SINGH DOSANJH, individually,

               Defendants.
------------------------------------------------------------------X
Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the

Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and to remedy violations of the New York Executive Law ("NYSHRL") and the Administrative Code of the City of New York ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by Defendant on the basis of her race (Hispanic), national origin, and gender (female), and height and weight under the NYCHRL together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4.  Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York.

5.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction for the State and City law claims pursuant to 28 U.S.C. § 1367.

## PROCEDURAL PREREQUISITES

6.  Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

7.  Plaintiff received a Notice of Right to Sue from the EEOC dated 12/4/2025, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

8.  This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

9.  Plaintiff is a Hispanic female resident of the State of New York.

10. At all times material, Defendant CR Gems, Inc. (hereinafter "Defendant CR") was and is a domestic business corporation duly existing under the laws of the State of New York.

11. At all times material, Defendant JSD TRADING LTD (hereinafter "JSDT") was and is a foreign business corporation duly existing under the laws of the United Kingdom that operates and conducts business in New York, New York.

12. At all times material, Defendant JEETENDRA SINGH DOSANJH (hereinafter "Defendant DOSANJH") was and is an individual male who resides in London, United Kingdom, and is the owner, CEO and President of Defendant CR and Defendant JSDT(Defendant CR, Defendant JSDT and Defendant DOSANJH are collectively referred to herein as "Defendants").

2

13. Defendants JSDT and CR operate as a single and joint entity conducting business domestically and internationally, and operate as an alter ego of Defendant DOSANJH, as he is the sole principal, owner and director of the companies.

14. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

15. On or about September 22, 2022, Plaintiff began working for Defendants as a "Sales/Customer Service Representative," with an annual rate of pay of approximately $52,000.00.

16. At all times material, Defendant CR's Manager who hired Plaintiff, Amber Morris (hereinafter "Ms. Morris") had supervisory authority over Plaintiff.

17. Defendant CR had multiple locations including those in the United Kingdom and in New York at 23 W. 47th Street, New York, NY 10036, where Plaintiff worked.

18. In or around October 2022, Defendant CR's owner, Defendant DOSANJH traveled to the United States and met Plaintiff for the first time in person.

19. Defendant DOSANJH arrived late in the day and invited Ms. Morris and Plaintiff to get a drink together after work hours.

20. During their initial encounter, Defendant DOSANJH asked Plaintiff a few personal questions, including her marital status and age.

21. When Plaintiff informed Defendant DOSANJH that she did not have children, he responded, **"WELL, THAT'S A PLUS BECAUSE WE WILL BE DOING SOME TRAVELING WITH THE COMPANY."**

22. Throughout Plaintiff's employment with Defendants, she has been subjected to continuous and systematic discrimination directed at her on the basis of her race, national origin, gender (female), height and weight.

23. For example, Defendant DOSANJH would become very upset with Plaintiff for making nominal mistakes as a new employee. He would call her and say things such as: **"USE YOUR BRAINS; YOU DON'T HAVE BRAINS! ARE YOU DUMB, WOMAN?"**

24. Alluding to her race and national origin as somehow lacking, (Plaintiff is Hispanic) Defendant DOSANJH made several comments including**, "PUNJABI ARE THE BEST. PUNJABI WOMEN STAY IN THE HOUSE TO COOK AND CLEAN AND MEN TAKE THE LEAD."**

25. Plaintiff was not provided any training and had to teach herself the company's computer system and processes to learn her job.

26. As the months progressed, Defendant DOSANJH's running misogynistic and racial commentary worsened.

27. For example, Defendant DOSANJH said, **"ARE YOU STUPID WOMAN? ARE YOU AN IDIOT? SHUT UP, I'M THE BOSS. YOU DO WHAT I SAY. JUST DO YOUR JOB AND SHUT UP. WHY DID YOU MAKE A MISTAKE? OH, IT'S BECAUSE YOU'RE A WOMAN."**

28. The ever worsening, severe and pervasively hostile work environment continued as Plaintiff's first year of employment ended.

29. Defendant DOSANJH's verbal abuse directed towards Plaintiff started including personal attacks regarding her appearance.

4

30. For example, Defendant DOSANJH told Plaintiff that she **"WAS VERY SHORT AND NEEDED LONGER LEGS"** or **"BUY SOME HEELS WOMAN!"** He would say this sometimes if he observed her struggling to reach high shelves over a counter in the showroom.

31. Additionally, Defendant DOSANJH repeatedly referred to Plaintiff as a **"STUPID COW" and "FUCKING COW"** blatantly criticizing her weight and bullying her in the process.

32. Defendants had multiple cameras set up throughout the workplace and showroom because of the nature of the business: loose gemstones.

33. Plaintiff understood the necessity of surveillance equipment but felt that Defendant DOSANJH was using the video surveillance to stalk and harass her unnecessarily.

34. For example, Defendant DOSANJH was very critical of any time she spent away from her workstation including personal bathroom use. He would ask her, "Why did you take so long in the bathroom? Were you taking a dump?" in an inappropriate manner.

35. Additionally, if she was running a few minutes late or got up from her area out of camera range, Defendant DOSANJH would telephone Plaintiff and demand that she take a picture of herself to show her location and/or what she was doing.

36. At lunch time if Plaintiff exceeded her allotted 30-minute break at all, Defendant DOSANJH would call her saying if she **"HAD LONGER LEGS [SHE] WOULD MOVE FASTER".**

37. At times, Defendant DOSANJH's verbal abuse would continue by him telling her, **"ARE YOU RETARDED WOMAN? DO YOU NEED A BABYSITTER? YOU'RE NOT A BABY! YOU'RE NOT SPECIAL!"**

38. Defendant DOSANJH's relentless, overbearing and intrusive management of Plaintiff's whereabouts made her very uncomfortable.

39. Plaintiff was very upset by the way Defendant DOSANJH spoke to her on a daily basis, routinely calling Plaintiff derogatory slurs and pejoratively referring to Plaintiff as: "**FUCKING COW, SHORT, SLOW LATINA, STUPID WOMAN, DUMB WOMAN, BITCH**" and other similar offensive combinations of such slurs.

40. Plaintiff complained on many occasions to Ms. Morris and objected to Defendant DOSANJH that he should not speak to her like that.

41. Ms. Morris took no action on Plaintiff's behalf.  Instead, her usual response to Plaintiff's complaints of discrimination and harassment in the workplace consisted of her making excuses for Defendant DOSANJH's behavior.

42. Ms. Morris would tell Plaintiff that she needed to be "more understanding" as Defendant DOSANJH was "under an enormous amount of pressure and stress."

43. In or around March 2023, during a business trip to Miami, Defendant DOSANJH required that Plaintiff accompany him to the Versace mansion for an industry party.  At this party, alcohol, illegal drugs and prostitutes were available to the guests.

44. At the mansion, Defendant DOSANJH became very inebriated and repeatedly asked Plaintiff's opinion whether he should patronize and engage in sexual activity with the sex workers at the party.

45. Between approximately August and December 2023, Defendant DOSANJH would send video chats to Plaintiff and Facetime her while he was drunk making flirtatious comments.

46. Plaintiff found her boss's behavior highly inappropriate, and it made her uncomfortable.

47. On one video call in particular, Defendant DOSANJH had on gym shorts and was gesturing towards his genitalia with the phone, exposing what appeared to be the outline of his erect penis through the gym shorts.

48. Plaintiff was mortified and shocked at this inappropriate gesture through the video call with Defendant DOSANJH.

49. In or around January 2024, Defendant DOSANJH began to call the New York office more often than he had in the past.

50. During many of these calls, it was apparent to Plaintiff that Defendant DOSANJH was inebriated.

51. Whether he was drunk or sober, Defendant DOSANJH's discriminatory verbal barrage was the same. His comments included: "**ARE YOU AN IDIOT WOMAN? SHUT UP COW. I CANNOT TALK TO A PERSON WHO HAS NO BRAINS LIKE YOU. I DON'T KNOW HOW YOU STILL HAVE A HUSBAND. I WANT TO MEET HIM SO I CAN ASK HIM HOW HE CAN STILL BE IN A RELATIONSHIP WITH SUCH A DUMB WOMAN LIKE YOU. YOU HAVE NO BRAINS.**"

52. Plaintiff would attempt to stay quiet and ignore Defendant DOSANJH's abuse in fear for her job. She relied on its income.

53. However, Plaintiff would often go into the bathroom after one of Defendant DOSANJH's assaults and cry. She would go home and cry while telling her husband what she endured on any particular day.

54. In or around March 2024, Defendants hired another Sales/Customer Service Representative named David Beck ("Mr. Beck").

55. Mr. Beck had the same essential job duties and responsibilities as Plaintiff.

56. Mr. Beck was completely inexperienced in the gemstone industry before Defendants hired him.

57. Mr. Beck relied on Plaintiff to teach him about gemstones, including their color, weight, and other crucial aspects of the job.

58. Mr. Beck was a similarly situated employee as Plaintiff but male.

59. Plaintiff was treated in a disparate manner than her male co-worker, Mr. Beck.

60. For example, Defendants allowed Mr. Beck to come in late and frequently took days off.

61. Plaintiff was in charge of Defendants' payroll and learned that despite being a new employee without experience in the gem industry, Mr. Beck was making significantly more money than she was.

62. Plaintiff questioned Defendant DOSANJH about Mr. Beck's disproportionate compensation and was told to "**MIND YOUR OWN BUSINESS, WOMAN!**"

63. Mr. Beck was allowed to come in late, leave early on Fridays, work less in the showroom area, and take long lunches without any repercussions.  Plaintiff was not permitted to do any of those things.

64. Plaintiff's job duties and responsibilities increased during this time because she had to do much of Mr. Beck's work in addition to her on.

65. After much begging, Defendant DOSANJH finally relented and gave her a small raise but warned he that he **"WILL NOT PAY OVERTIME AND IF [SHE DIDN'T] LIKE IT [SHE COULD] LEAVE".**

66. In or around June or July 2024, Plaintiff attended a gem show in Las Vegas along with Defendant DOSANJH and Ms. Morris.

67. On one of the evenings when Defendant DOSANJH was visibly intoxicated, he grabbed her arm while they were at the casino and said**, "PLEASE DON'T LEAVE ME WITH THIS COW (referring to Ms. Morris) BECAUSE IF YOU DO SHE WILL TAKE ME TO MY ROOM AND SHE WILL WANNA FUCK ME".**

68. Plaintiff was very upset and disturbed by her boss's behavior and left the area.

69. In or around the summer of 2024, Plaintiff started to complain about Defendant DOSANJH's treatment directly to him.   She would beg him to stop speaking to her that way.

70. In response, Defendant DOSANJH would tell her to shut up and call her again a "**COW**", an "**IDIOT WOMAN**", etc.

71. More evidence of Defendant DOSANJH's sexist and misogynistic bias arose in instances where he told Plaintiff that **"WOMEN IN [HIS] COUNTRY WERE TREATED POORLY AND THEY BELONG IN THE KITCHEN RAISING A FAMILY AND THAT THEY SHOULD ALWAYS SHUT UP."** He reiterated to Plaintiff that **"IN THE PUNJAB CULTURE MEN ARE THE ONES WHO HAVE THE BALLS IN THE PANTS, AND SO FOR THAT REASON, [DEFENDANT DOSANJH] WILL TREAT [PLAINTIFF] DIFFERENT."**

72. Things escalated when Defendant DOSANJH calling Plaintiff's personal cell at home late at night.

73. Sometimes Defendant DOSANJH would hand his phone to friends he was with and have them flirt with Plaintiff, then hang up.

74. On other non-work-related telephone calls to Plaintiff from Defendant DOSANJH, he would activate the camera portion of his phone showing her himself laying down in his shorts or underwear.

75. Plaintiff found these communications from her boss offensive.

76. Over the course of her tenure of employment with Defendants, Plaintiff's mental health was severely affected in a negative way.

77. Plaintiff told Defendant DOSANJH that his treatment of her was making her mental health worse.

9

78. He replied that he "**DIDN'T CARE ABOUT [HER, HER] PROBLEMS OR [HER] PERSONAL LIFE.**"

79. Physically, Defendant DOSANJH's manipulation of Plaintiff's bathroom break affected her urinary tract health and she kept getting infections because she was suppressing her urge to go to the bathroom for fear of her boss timing her and berating her over her use of the facilities.

80. On or about October 2, 2024, Plaintiff left on a vacation in Peru. While on vacation, she lost her phone.

81. On or about October 5, 2024, Plaintiff borrowed her father's cell phone to "check-in" with Defendant DOSANJH.

82. Upon answering, Defendant DOSANJH told her that he had been trying to reach her during her absence. Plaintiff explained that she had lost her phone during the trip and had yet to replace it.

83. Inexplicably, Defendant DOSANJH told her she was fired. When Plaintiff tried to get an actual reason for the termination, she was told the following**: "I'M DONE WITH YOU. I'M JUST SICK OF YOU. I'M TIRED OF YOU. IT'S TIME WE GO OUR SEPARATE WAYS. IT'S ALMOST LIKE YOU'RE MY GIRLFRIEND AND WE'RE BREAKING UP."**

84. Plaintiff was shocked by these statements and asked her boss what he was talking about.

85. Defendant DOSANJH continued in the same vein telling her that he just didn't want her there anymore and to come by and pick up her shit.

86. When Plaintiff returned to the office to collect her personal items, Mr. Beck was sitting in her former seat and appeared to have assumed her role for Defendants.

87. On or about October 12, 2024, Defendants terminated Plaintiff.

88. Defendant would not have terminated Plaintiff but for her race/gender.

89. Defendant would not have retaliated against Plaintiff but for her complaints of race/gender discrimination.

90. Defendant would not have discriminated against Plaintiff but for her race/gender/height/weight.

91. As a result of Defendant's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

92. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress.

93. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

94. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

**AS A FIRST CAUSE OF ACTION
FOR RACE, NATIONAL ORIGIN
AND SEX/GENDER DISCRIMINATION UNDER TITLE VII
(only against corporate Defendants)**

95. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

96. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., for relief based upon the unlawful employment practices of the above-named Defendant.  Plaintiff complains of Defendants' violations of Title VII's prohibition against discrimination in employment – based in whole or in part, upon an employee's race, national origin, and sex/gender.

11

97. Plaintiff's work environment became hostile and was permeated with discrimination, ridicule, insults, and other discriminatory acts.

98. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her race, national origin, and sex/gender.

99. Defendants' actions are a continuing violation.

100.    As a result of Defendants' discriminatory treatment of PLAINTIFF, she has suffered severe emotional distress, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, physical humiliation, physical injury, intimidation, special damages, fear, anxiety, depression, anger and other non-pecuniary losses.

101.  Plaintiff is entitled to the maximum amount allowable under the law.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII FOR RETALIATION**
**(only against corporate Defendants)**

102.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

103.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

104.  Defendants violated the section as set forth herein.

105.  Plaintiff engaged in protected activity when she complained to Defendant DOSANJH.

106.  Plaintiff's complaints were futile and she suffered adverse employment actions.

107.  In response, Defendants subjected Plaintiff to adverse employment action, humiliation and retaliatory conduct.

108. Defendants  had no good faith justification for their actions/conduct against Plaintiff.

109. Defendants' actions were and are a continuing violation.

110. As a result of Defendants' retaliatory treatment of PLAINTIFF, she has suffered severe emotional distress, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, physical humiliation, physical injury, intimidation, special damages, fear, anxiety, depression, anger and other non-pecuniary losses.

111. Plaintiff is entitled to the maximum amount allowable under this law.

**AS A THIRD CAUSE OF ACTION**
**FOR VIOLATION OF THE FEDERAL EQUAL PAY ACT**
**29 U.S.C. § 206(d)**
**(only against corporate Defendants)**

112. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above as if fully set forth herein.

113. The Federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), prohibits employers from paying employees of one sex at a rate less than employees of the opposite sex for equal work on jobs that require equal skill, effort, and responsibility, and which are performed under similar working conditions.

114. Plaintiff and comparator employee David Beck ("Mr. Beck") performed substantially equal work requiring equal skill, effort, and responsibility, under similar working conditions. Plaintiff trained Mr. Beck and performed more complex job duties than he did.

115. Defendants paid Mr. Beck—a less experienced male employee—a higher rate of pay than Plaintiff, a female employee, for substantially equal work.

116. The pay disparity between Plaintiff and Mr. Beck was not based on a seniority system, merit system, a system that measures earnings by quantity or quality of production, or any factor

13

other than sex. Defendants provided no legitimate, gender-neutral explanation for the disparity in pay.

117. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, lost opportunities for advancement, and other economic damages.

118. Defendants' violation of the EPA was willful, entitling Plaintiff to liquidated damages.

119. Plaintiff is entitled to all legal and equitable relief available under the EPA, including back pay, front pay, liquidated damages, attorneys' fees, and costs.

**AS A FOURTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**DISCRIMINATION**
**(against all Defendants)**

120. New York State Executive Law §296 provides that, "1.  It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's…race, national origin, sex…to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

121. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her race, national origin and gender, together with creating a hostile work environment and retaliation.

122. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of Executive Law §296.

123. Defendants' actions are a continuing violation.

124. As a result of Defendants' discriminatory treatment of PLAINTIFF, she has suffered severe emotional distress, emotional pain, suffering, inconvenience, loss of enjoyment of life,

14

humiliation, physical humiliation, physical injury, intimidation, special damages, fear, anxiety, depression, anger and other non-pecuniary losses.

125. Plaintiff is entitled to the maximum amount allowable under this law.

**AS A FIFTH CAUSE OF ACTION
UNDER NEW YORK STATE LAW
RETALIATION
(against all Defendants)**

126. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

127. New York State Executive Law §296(7) provides that "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

128. Defendants engaged in an unlawful retaliatory practice by discriminating against and otherwise retaliating against Plaintiff because of her race, national origin, sex/gender, and her complaints of discrimination, together with creating a hostile work environment.

129. Plaintiff engaged in protected activity when she complained to her manager, supervisor, and co-workers.

130. Plaintiff's complaints were futile, and she suffered adverse employment actions.

131. In response, Defendants subjected Plaintiff to adverse employment action, humiliation and retaliatory conduct.

132. Defendants had no good faith justification for their actions/conduct against Plaintiff.

133. Defendants' actions were and are a continuing violation.

134. As a result of Defendants' retaliatory treatment of PLAINTIFF, she has suffered severe

15

emotional distress, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, physical humiliation, physical injury, intimidation, special damages, fear, anxiety, depression, anger and other non-pecuniary losses.

135. Plaintiff is entitled to the maximum amount allowable under this law.

**AS A SIXTH CAUSE OF ACTION**
**FOR VIOLATION OF THE NEW YORK EQUAL PAY ACT**
**NYLL § 194**
**(against all Defendants)**

136. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above as if fully set forth herein.

137. New York Labor Law § 194 prohibits employers from paying an employee at a wage rate less than the rate paid to an employee of the opposite sex for equal work on jobs requiring equal skill, effort, and responsibility, and performed under similar working conditions.

138. Plaintiff and Mr. Beck performed substantially equal work requiring equal skill, effort, and responsibility. Plaintiff also trained Mr. Beck in gemstone grading and customer service functions.

139. Despite performing equal or greater work, Plaintiff was paid less than Mr. Beck, a male comparator, in violation of NYLL § 194.

140. Defendants' pay practices were not based on a bona fide factor such as education, training, experience, a seniority system, or any gender-neutral factor.

141. Defendants' violation of NYLL § 194 was willful, entitling Plaintiff to liquidated damages in an amount equal to one hundred percent of the total amount of underpayment.

142. As a result of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, and other pecuniary and non-pecuniary damages.

143. Plaintiff is entitled to all remedies available under NYLL § 194 and § 198, including back wages, liquidated damages, attorneys' fees, and costs.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**
**(against all Defendants)**

144. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

145. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of … race, national origin, gender…height, weight…, [t]o refuse to hire or employ or to bar or to discharge from employment such person… or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

146. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her race, national origin, gender, height and weight, together with creating a hostile work environment, and retaliation.

**AS A EIGHTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**RETALIATION**
**(against all Defendants)**

147. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

148. The New York City Administrative Code Title 8-107(7) provides that:

"It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

149. Defendants engaged in an unlawful and retaliatory and discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her complaints of race, national origin, gender, height and weight discrimination.

150. Defendants ignored Plaintiff's concerns and continued to subject her to a hostile work environment including but not limited to verbal abuse and intimidation.

151. Defendants had no good faith justification for their actions/conduct against Plaintiff.

152. Defendants' actions were and are a continuing violation.

153. As a result of Defendants' retaliatory treatment of PLAINTIFF, she has suffered severe emotional distress, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, physical humiliation, physical injury, intimidation, special damages, fear, anxiety, depression, anger and other non-pecuniary losses.

154. Plaintiff is entitled to the maximum amount allowable under this law.

## AS A NINTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## INTERFERENCE WITH PROTECTED RIGHTS
### (against all Defendants)

155. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

156. New York City Administrative Code §8-107(19) provides:

It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate,

18

threaten or interfere with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted to protected pursuant to this section.

157. Defendant violated the section cited herein as set forth.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the New York Executive Law, the New York City Administrative Code on the basis of Plaintiff's race, national origin, gender, height and weight, together with creating a hostile work environment, retaliation, interference with protected rights, and wrongful termination;

B.   Awarding damages to Plaintiff for any lost wages and benefits, past and future, back pay and front pay, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff liquidated damages

F.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

G.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

19

Plaintiff requests a jury trial on all issues to be tried.


**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements of this action; and for such other relief as the Court deems just and proper.

Dated: December 4, 2025
       New York, New York

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*


By: /s/ Seamus Barrett
    Seamus P. Barrett, Esq.
    45 Broadway, Suite 430
    New York, NY 10006
    Tel: (212) 248-7431

20